## Strickler, Appellant, v. McElroy.

*Corporations—Directors—Illegal sale of stock—Statute of limitations.*

In an action by a stockholder against directors of a corporation to recover a share of profits on stock illegally sold by the directors to themselves at par, and thereafter sold at an advance, the statute of limitations is not a bar where it appears that the suit was brought on March 22, 1907, that the certificates were dated March 13, 1901, and that the stock was not actually delivered to the defendants or paid for by them until April 2, 1901.

Argued March 9, 1909.  Appeal, No. 11, March T., 1909, by plaintiff, from judgment of C. P. York Co., April T., 1907, No. 77, on verdict for defendants in case of Eli S. Strickler v. Harry McElroy et al., Executors of the last Will and Testament of Henry McElroy, deceased, et al.  Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.  Reversed.

Assumpsit to recover a share of profits on stock alleged to have been illegally sold to the defendants by themselves as directors, and thereafter resold at a profit.  Before BITTEN-GER, P. J.

At the trial the plaintiff made the following offer:

Mr. Niles: If the court please, I now offer in evidence the certificates of stock Nos. 7, 8, 9 and 10, being certificate No. 146 to Henry McElroy for 105 shares; 147 to Henry Birnstock for twenty-three shares; 148 to John W. Filbey for twenty-two shares, and 149 to Howard L. Keller for twenty-two shares. For the purpose of sustaining the issue on the part of the plaintiff.

Mr. Black: It is objected to, that it appears from the face of the certificates offered, and from the minutes of the directors of March 12, 1901, already in evidence, that the action of the corporation by its board of directors, authorizing the issuing of these certificates, was taken more than six years before the beginning of this suit; and that the certificates were executed for the use of these defendants more than six years before the beginning of this suit.

And it is further objected, that it appears from the uncontradicted evidence already in that Eli Strickler was offered a part of these 172 shares of stock before they were issued by the board of directors to these defendants, and refused to take any part of them.

It is further objected, that it appears from the evidence already in that Eli Strickler, not later than January, 1903, had actual notice of the fact that these defendants held the stock in question, and for years after that time acquiesced in, and consequently ratified the issue of the stock to these defendants.

The Court: We reject this offer for the reasons stated in the objections,—on the plea of the statute of limitations, and sufficient has not been shown to raise the bar of the statute of limitations; and we seal an exception for the plaintiff. [2]

Mr. Niles: The plaintiff respectfully offers in evidence in connection with the testimony already in the case, the certificates Nos. 146, 147, 148 and 149, being exhibits Nos. 7, 8, 9 and 10; for the purpose of sustaining the issue on the part of the plaintiff, and showing, in connection with the testimony already in, that the defendants, as directors of the Wrightsville Hardware Company, by action by them in pursuance of an arrangement made between them on March 12, 1901, and on March 13, 1901, issued certificates of stock dividing up the 172 shares of stock of the authorized capital of 2,500 shares, unissued up to that time, among themselves; and that they did not consummate the transaction, or give any notice to the plaintiff, or to any of the stockholders, in regard thereto, until April 2, 1901, at which time the whole 172 shares were paid for by the check of Henry McElroy, one of the defendants, for $1,720. For the purpose of sustaining the issue on the part of the plaintiff, and showing the liability of these defendants to him for his proportion of the profit realized by them from the 172 shares of stock.

Mr. Black: This offer is objected to for the same reasons as those set forth in the objection to the last offer of these stock certificates.

The Court: The offer is rejected, and an exception sealed for

the plaintiff, upon the objections made by the defendants' counsel, for the reasons stated in the objections; and for the reason that the plea of the bar of the statute of limitations has not been raised by sufficient evidence mentioned in the offer, or by any other evidence in the case. [3]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* among others were (2, 3) rulings on evidence, quoting the bill of exceptions.

*Henry C. Niles*, with him *Chas. A. May* and *George E. Neff*, for appellant.—The statute of limitations could not begin to run before April 2, 1901. The action was brought March 22, 1907, ten days before the expiration of the six-year limit.

Plaintiff had an inherent right to the 172 shares of treasury stock in the proportion of his 152 shares to the 2,328 total outstanding stock: Reese v. Bank of Montgomery County, 31 Pa. 78; Morris v. Stevens, 178 Pa. 563; Electric Co. of America v. Edison Electric Illuminating Co., 200 Pa. 516.

Where a wrong is committed privately by a person in a fiduciary capacity and is actively concealed, or where the person wronged has no means or opportunity of knowledge, the statute only begins to run from the time of discovery or at most when discovery was possible: Harrisburg Bank v. Forster, 8 Watts, 12; McDowell v. Potter, 8 Pa. 189; Ferris v. Henderderson, 12 Pa. 49; Bricker v. Lightner, 40 Pa. 199.

*J. S. Black* and *N. S. Ross*, with them *H. C. Brenneman*, for appellees.—To prevent the barring of an action by the statute of limitation, on account of fraud, it must appear that the fraud not only was not discovered, but could not have been discovered with reasonable diligence: Scranton Gas & Water Co. v. Lackawanna Iron & Coal Co., 167 Pa. 136; Com. Title Ins., etc., Co. v. Folz, 23 Pa. Superior Ct. 558; Franklin v. Franklin, 22 Pa. Superior Ct. 463.

The learned court, at the trial of the case, with the plaintiff's statement before him (which expressly averred the culmination of the act of the defendants, upon which the suit was

based, as March 12 and March 13, 1901, and further averred fraud in its execution and subsequent concealment), was justified in his ruling that, unless the plaintiff would prove such fraud and concealment by defendants as would prevent the plaintiff from ascertaining the facts if he exercised the means within his reach, the statute of limitation would begin to run from the date of the commission of the alleged wrongful act and not from the time it was discovered: Guarantee Trust & Safe Deposit Co. v. Farmers' & Mechanics' Nat. Bank, 202 Pa. 94; Noonan v. Pardee, 200 Pa. 474; Com. v. Donnelly, 36 Pa. Superior Ct. 619; Link v. McLeod, 194 Pa. 566; Smith v. Blackley, 198 Pa. 173.

OPINION BY BEAVER, J., July 14, 1909:

The plaintiff, who was a stockholder, sought to recover in the court below from the defendants, who were directors, or representatives of a director, of the Wrightsville Hardware Co., his proportion of the difference between the price paid for certain stock of the corporation purchased by the defendants as individuals from themselves as directors at par, and that at which it was subsequently sold by them, on the ground that the action of the directors was a fraud upon the rights of the other stockholders.

In the trial of the cause there were offered in evidence certain certificates of stock representing this transaction. The offer was rejected by the court on the ground that the certificates were dated March 13, 1901, and the suit, in which the recovery was sought to be made, was brought March 22, 1907, more than six years after the date of these certificates. When the offer was first made, there was no intimation therein that the plaintiff would show later that the certificates were not delivered to the defendants nor paid for by them until April 2 following their date. It subsequently appeared, upon the examination of one of the defendants, who was called by the plaintiff as a witness for cross-examination, that, although dated March 13, the certificates were not delivered to the defendants nor paid for by them until April 2, the sale being completed by the delivery of, and payment for, the stock at that time. The

offer was then made, in which it is distinctly stated "that they (the defendants) did not consummate the transaction, or give any notice to the plaintiff, or to any of the stockholders, in regard thereto, until April 2, 1901, at which time the whole 172 shares were paid for by the check of Henry McElroy, one of the defendants, for $1,720, for the purpose of sustaining the issue on the part of the plaintiff, and showing the liability of these defendants to him for his proportion of the profit realized by them from the 172 shares of stock."

When this evidence was first offered, it did not appear that the sale was not completed as of the date of the certificate and the court may have had reason to assume that that day was the actual date of the sale. The plaintiff was probably unable to accompany the offer by what would be subsequently proved as to the time that the sale was completed, in view of the fact that the testimony was elicited from one of the defendants as on cross-examination, and, therefore, it is difficult for us to determine that either the plaintiff could have made his offer more full or that the court was not justified, as it was made, in rejecting it. That, however, is a question of little practical value, because the subsequent offer raised the entire question of the admissibility of these certificates of stock as evidence under the facts, as they were finally brought out by the cross-examination of one of the defendants, as stated.

It appears to us that this last offer was admissible for the reason that these shares of stock did not become the property of the defendants, until they were delivered by the proper officers of the corporation and paid for, and, inasmuch as this time was less than six years from the date of the writ, the offer was proper and should have been received. It seems to us that, if the plaintiff had brought his action on March 14, 1901, an entirely proper defense to it would have been the fact that no stock had been transferred to the defendants and no money paid by them, and that, therefore, no sale had been completed. It would have been impossible for the plaintiff to have maintained an action at law for the excess of the value of the stock above the price paid therefor, before the consummation of the transaction, which took place on April 2, 1901. The plaintiff

was, therefore, entirely within his rights under the statute of limitations in bringing his action at any time within six years from April 2, 1901.

The charge of the court is also assigned for error, in which it is said, as the conclusion thereof: "Therefore, we have excluded his (plaintiff's) testimony as to the issuing of these shares of stock. That ends his contention in this court to recover in this case, I presume, as he has failed to overcome the bar of the statute of limitations. It will be your duty, on account of the plaintiff not being able to sustain his claim, to render a verdict in favor of the defendants."

Holding as we have already said, that the sale was not completed and the ownership of the stock transferred from the corporation to the defendants until April 2, the court was in error as to the application of the bar of the statute of limitations. The third and fourth assignments of error are, therefore, sustained.

Judgment reversed, with a new venire.